294 So.2d 468

**Troy R. ZEIGLER**

v.

**STATE.**

**3 Div. 209.**

Court of Criminal Appeals of Alabama.

Nov. 13, 1973.

Rehearing Denied Dec. 11, 1973.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

P. Richard Hartley, Greenville, for appellant.

W. J. HARALSON, Supernumerary Circuit Judge.

Appellant was charged with robbery and tried in the Circuit Court of Butler County. He was convicted of grand larceny and sentenced to imprisonment for eight years, from which judgment he appeals.

It appears from the record that appellant was being held in the Butler County jail, where he was a "trusty" and helped with the kitchen work. He had the "run" of the inside of the jail, the locked front door being the only thing between him and freedom. On the evening of May 6, 1971, the night jailer, Mr. Fail, came on duty near 4 to 5 o'clock. He usually carried a .25 caliber automatic pistol when on duty. The sheriff saw him soon thereafter, and he had the pistol. Later in the evening the sheriff went to the jail and, after failing to get any response from calling, found the jailer in a locked room lying on the floor with injuries to his head. His pistol and the front door key to the jail were missing. A count of the prisoners also showed the appellant to be missing.

Several prisoners testified they saw the jailer on the evening in question. Two said they observed him wearing the pistol when they saw him before the appellant's escape. One prisoner said he saw appellant running down the street in front of the jail in the late afternoon.

The Sheriff of Butler County, a brother-in-law of the jailer, went to Texas where appellant had been apprehended, and brought him and his wife back to Butler County. The key to the front door of the jail was found in appellant's possession. The sheriff and the deputy accompanying him testified as to certain incriminating statements made by appellant on the return trip. Objection of the appellant was made to the admission of the statements on the grounds they were not shown to be voluntary and there was no waiver knowingly and intelligently made by appellant of his rights. The court allowed the statements to be admitted in evidence, after voir dire hearing out of the presence of the jury.

The sheriff further testified that neither he nor any one else did anything to coerce appellant, offered no rewards, inducements, or held out any hope to get him to talk and that he was given the Miranda warnings and waived his rights, set out therein, before making the statement.

Mr. Fail, the jailer, was deceased at the time of the trial and no eye witness to the occurrence was available.

Appellant testified that he was confined in jail at the time in question; that he was a "trusty" and that Mr. Fail came on duty in a drunken condition; that he found the jailer after he had fallen in the supply room and hurt his head, which was bleeding. He testified that Mr. Fail gave him the front door key and $2.00 and sent him after something to drink. He denied taking the pistol from Mr. Fail but admitted leaving with the $2.00 and the jail key. He also denied making any statement on the return trip as testified to by the sheriff.

The card containing the Miranda warnings on one side and questions with regard to the waiver on the other, was introduced as Exhibit A for the State.

We think and hold that the record will support a finding that the statement

was voluntarily made, that it was made without coercion, inducement, fear, hope, reward or any improper influence being exerted on appellant.

We further hold the court could properly find he was given the Miranda warnings and knowingly, intelligently and voluntarily waived his rights guaranteed under the doctrine of that decision.

While the court on voir dire did not make an express ruling on the objections of appellant, the surrounding circumstances show he and the parties all understood his determination of the question adversely to the appellant. Upon the reappearance of the jury the matter was allowed in evidence.

■ While we think it better practice for the court to make an express ruling into the record, (Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593), we do not understand this procedure was mandated in *Sims,* supra, and it is sufficient if the matter can be determined from the record by the surrounding procedure and circumstances.

In addition to contending that proper Miranda warnings were not given and voluntarily and knowingly waived, appellant also insists that at the time of the admission of the inculpatory statements the corpus delicti had not been proved by the State.

■ It is a well known and fundamental rule that there must be independent proof of the corpus delicti in a criminal case before any confession or inculpatory statement may be admitted in evidence against a defendant. Kozlowski v. State, 32 Ala. App. 453, 27 So.2d 811.

■ It is further well established that the corpus delicti may be proved by circumstantial as well as direct and positive evidence, and where there are facts introduced from which inferences of guilt may be legally drawn, it is a question for the jury as to whether the corpus delicti has been proved. Royals v. State, 36 Ala.App. 11, 56 So.2d 363, cert. denied 256 Ala. 390,

56 So.2d 368. (See cases cited in Ala.Digest, Criminal Law, Volume 6, ☜563).

■ We are also aware of the rule that mere suspicion shown by the evidence is not enough to establish corpus delicti. Heath v. State, 44 Ala.App. 701, 220 So.2d 872.

■ It is our opinion that the record shows testimony introduced by appellant of circumstances from which the jury could legally infer the corpus delicti of the crime of larceny before the State offered evidence of the inculpatory statements of appellant.

■ The most cogent argument for reversal in appellant's brief is that the court erred in sustaining an objection by the State when the sheriff was questioned on cross-examination, "You do have a bias feeling, don't you?"

A thorough and sifting cross-examination of opposing witnesses is guaranteed to litigants by the statute, Title 7, § 443, Code of Alabama 1940.

We quote from Green v. State, 258 Ala. 471, 64 So.2d 84 as follows:

"It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony. Both our appellate courts have approved the principle stated in 2 Wigmore on Evidence, 2d Ed., § 949, p. 332: 'The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.' (citations omitted).

"And the extent to which a witness may be cross-examined depends in some instances on the importance of his testimony."

In Adams v. State, 280 Ala. 678, 198 So. 2d 255, the court stated:

"Ordinarily, the proper way to show bias on the part of a witness is to ask him directly the state of his feelings . . ."

And further in Nichols v. State, 276 Ala. 209, 160 So.2d 619, it is stated:

"In the instant case, the court sustained the objection to the proper, preliminary question, 'What is the state of your feelings toward this young man?' and thereby cut off any inquiry as to the possible bias, prejudice or partiality of the witness. *For this error, the judgment must be reversed.*" (emphasis added).

For the error above noted, the case is reversed and remanded.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Reversed and remanded.

ALMON, TYSON, HARRIS and DeCARLO, JJ., concur.

CATES, P. J., not sitting.